[No. 20307-3-II.  Division Two.  September 25, 1998.]

GEORGE ALAN MAXWELL, *Appellant*, v. HARRIET SUNSHINE PIPER, ET AL., *Respondents*.

*William F. Nelson*, for appellant.

*Odine H. Husemoen* and *Mark S. Brumbaugh* of *Walstead, Mertsching, Husemoen, Donaldson & Barlow, P.S.*, for respondents.

MORGAN, J. — This case involves a motor vehicle accident at an uncontrolled intersection. The question is whether the evidence is sufficient to support a finding of contributory negligence. The trial court answered yes, and so do we. Thus, we affirm.[1]

In Vancouver, Washington, Eighth Street and V Street intersect. Eighth Street runs east and west, V Street runs north and south, and the intersection is not controlled. When vehicles are parked on the east side of V Street, just south of Eighth, a driver westbound on Eighth cannot see

---

[1]As part of this court's backlog reduction program, we initially issued a short unpublished opinion, without oral argument, affirming the trial court. Maxwell responded with a motion for reconsideration, which we granted. Now, after closer analysis, we issue this second opinion in lieu of our first one.

to the south on V, and a driver northbound on V cannot see to the east on Eighth.

On March 11, 1993, George Maxwell was driving west on Eighth while Harriet Piper was driving north on V. They agree that neither could see the other because of vehicles parked along the east side of V. They collided in the intersection, and Piper's vehicle rolled into a third one, driven by James Brown. Maxwell was the favored driver, and Piper the disfavored driver.[2]

In January 1994, Maxwell sued Piper for personal injuries. In October 1995, the trial court convened a jury trial. Witnesses included Maxwell, Piper, and Brown. Maxwell testified to his approach to the intersection as follows:

> I came almost to a stop, . . . put it in second gear. . . . and on the south side there was a house there and on that south street where Mrs. Piper came from was a car, a van and a pickup, and then some kind of a moving van, some kind of a bigger van behind it, down along that street. I couldn't see. As I crept out, I looked and I got to the point of you either go or you don't go and I'm sticking out to the point right there. . . . I looked one more time, and as I pulled out she was right in front of me. . . . I remember getting my foot on the brake but I never had time to push it.[3]

Piper testified as follows:

> Q: Did you see this car to your right; that is, George Maxwell's vehicle? . . . Did you see this car to your right prior to the time it struck your car?
>
> . . . .
>
> A: I didn't see him, no.
>
> . . . .
>
> . . . There was cars parked along the side, and he wasn't visible.

---

[2]RCW 46.61.180(1).

[3]Report of Proceedings at 85-86.

Q: All right. Where were these cars parked along the side?

A: On my right-hand side up to the corner.

Q: They were . . . right on the right-hand side of V Street?

A: Yes.[4]

Piper estimated she was three-quarters of the way across the intersection when the collision occurred.

Brown testified that he was driving south on V, just north of Eighth, when he saw both Piper and Maxwell approach the intersection.

Q: Just tell us what happened . . . .

A: Okay. The accident happened at the intersection of V and 8th Street . . . . I was southbound . . . . I observed Mrs. Piper . . . and she was driving very slowly, I would guess anywhere from 10 to 15 miles an hour. Struck me as a typical little old lady who's hardly able to see over the wheel . . . . And I saw this gentleman coming from my left on 8th Street, and . . . I stopped because . . . I could see that something was going to happen if someone didn't do something because they were on a collision course.

. . . .

. . . I observed him on my left coming in his pickup toward the intersection, and as I saw him he was looking toward me . . . and at no time did I observe him look around to see Miss Piper. And, conversely, at no time did I see her particularly look at the intersection looking for him. Or any other traffic either direction. And so like I say, I stopped, knowing something was going to happen, and sure enough, neither one of them stopped. However, Mrs. Piper was well into the intersection such that she was two-thirds of the way through when he hit her broad side . . . and she just coasted into the front of my little Honda wagon . . .

Q: Did you see Mr. Maxwell's car slow at all as he entered the intersection?

A: I couldn't say whether he slowed or not. Neither one of

---

4Clerk's Papers at 52-54.

them was going fast. There's no question that anybody was speeding. You know, it was just a case of they were—both neither one of them saw each other as far as I could tell. And they didn't—the impact happened because they were both in the same spot at the wrong time.

Q: Did you ever see Mr. Maxwell look to his left to see if any traffic was coming from Mrs. Piper's direction?

A: I didn't see him look to the left. That doesn't mean he didn't because maybe I was looking at her at that time.[5]

At the close of the evidence, Maxwell asked the trial court to rule that Piper was negligent as a matter of law, and that he was not negligent as a matter of law. The trial court ruled that Piper was negligent as a matter of law and so instructed the jury. The trial court declined to rule that Maxwell was not negligent as a matter of law, instructing instead, over Maxwell's objection, that Maxwell's negligence, if any, was for the jury to decide. The jury found Maxwell's total damages to be $12,468 and apportioned negligence 60 percent to Piper and 40 percent to Maxwell.

After the entry of judgment, Maxwell filed this appeal, in which he claims that the evidence was insufficient to support the jury's finding of contributory negligence and that he should receive the balance of the total damage award ($4,987). It is undisputed that Piper was negligent in failing to yield the right-of-way.

■■ At an uncontrolled intersection, the favored driver is the one on the right, and the disfavored driver is the one on the left.[6] The favored driver generally has a superior right-of-way, to which the disfavored driver generally must yield.[7] The favored driver's right-of-way is not absolute,

---

[5]Report of Proceedings at 121-23.

[6]RCW 46.61.180(1).

[7]RCW 46.61.180(1); *Whitchurch v. McBride*, 63 Wn. App. 272, 276, 818 P.2d 622 (1991), *review denied*, 118 Wn.2d 1029 (1992).

however,[8] and each driver is required to exercise reasonable care.[9] Whether a driver exercises such care depends on all the circumstances, one of which is that a reasonable person in the favored driver's position would ordinarily expect the disfavored driver to yield the right-of-way. Thus, the favored driver may assume that the disfavored driver will yield the right-of-way until the favored driver reaches that point at which a reasonable person would realize that the disfavored driver is not going to yield.[10]

Applying these rules here, we take the evidence and inferences in the light most favorable to Piper.[11] Maxwell testified he could not see to the south as he approached the intersection. Thus, he brought his vehicle "almost to a stop," "crept out," and "looked."[12] By then, he was "to the point of you either go or you don't go and I'm sticking out to the point right there. . . . I looked one more time, and *as I pulled out* she was right in front of me. . . . I remember *getting my foot on the brake but I never had time to push it.*"[13] Given this testimony, the jury could reasonably have inferred (1) that Maxwell "crept" into the intersection because he could not see; (2) that *after* he was in the intersection, he "pulled out"—i.e., accelerated; (3) that at the moment he accelerated, Piper was very close, and would have been seen by a reasonable person in Maxwell's shoes; and (4) that if Maxwell had not "pulled

---

[8]*Bohnsack v. Kirkham*, 72 Wn.2d 183, 192, 432 P.2d 554 (1967); *Tobias v. Rainwater*, 71 Wn.2d 845, 852, 431 P.2d 156 (1967) (quoting *Mondor v. Rhoades*, 63 Wn.2d 159, 167, 385 P.2d 722 (1963)).

[9]*Whitchurch*, 63 Wn. App. at 276; *Whisler v. Weiss*, 26 Wn.2d 446, 459-60, 174 P.2d 766 (1946) (favored driver); *White v. Fenner*, 16 Wn.2d 226, 235, 133 P.2d 270 (1943) (same); *Kilde v. Sorwak*, 1 Wn. App. 742, 746, 463 P.2d 265, *review denied*, 77 Wn.2d 963 (1970) (disfavored driver).

[10]*Whitchurch*, 63 Wn. App. at 276 (citing *Olpinski v. Clement*, 73 Wn.2d 944, 949, 442 P.2d 260 (1968); *Kilde*, 1 Wn. App. at 746)).

[11]*Moyer v. Clark*, 75 Wn.2d 800, 803, 454 P.2d 374 (1969); *Frasch v. Leedom*, 62 Wn.2d 410, 414, 383 P.2d 307 (1963); *Clements v. Blue Cross*, 37 Wn. App. 544, 548, 682 P.2d 942, *review denied*, 102 Wn.2d 1016 (1984).

[12]Report of Proceedings at 85-86.

[13]*Id.* at 86 (emphasis added).

out"—i.e., accelerated—a collision would not have occurred. A jury choosing to draw these inferences could then have concluded that Maxwell was negligent, and that his negligence was a proximate cause of the collision. Accordingly, the evidence is sufficient to support the jury's finding of contributory negligence.

Although Maxwell argues earnestly to the contrary, we are unable to discern that our conclusion here is inconsistent with our decision in *Whitchurch v. McBride*.[14] In *Whitchurch*, the evidence contained a void making it impossible to determine what a reasonable person in the favored driver's shoes would have seen as he or she approached the intersection. This void did not prevent a finding of negligence, for other evidence in the record, taken most favorably to the plaintiff, showed that the favored driver had been speeding. The void did, however, prevent a finding of proximate cause, for it left the trial court with no way of determining whether the accident would or would not have occurred if a hypothetical reasonable person had been operating the favored driver's vehicle. The evidence here contains no such void, for both Maxwell and Piper testified that their vision was obstructed by vehicles parked on the east side of V Street. As a result, the record shows what a reasonable person in Maxwell's shoes would have seen, and the jury was able (a) to compare what a reasonable person would have done with what Maxwell actually did do, and (b) to determine whether the accident would or would not have happened if a hypothetical reasonable person had been operating Maxwell's vehicle.

We conclude that the evidence was sufficient to support a finding that Maxwell was negligent, and that there was no error.

Affirmed.

---

[14] 63 Wn. App. 272.

478

[Nos. 21459-8-II; 21460-1-II;    Division Two.    September 25, 1998.]
21461-0-II; 22093-8-II; 22123-3-II;
21492-0-II; 21493-8-II; 21494-6-II.