[No. 38686. Department Two. October 13, 1967.]

ROBERT BOHNSACK, *Respondent*, v. RALPH E. KIRKHAM
*et al., Appellants.**

*Reported in 432 P.2d 554.

*Thomas D. Loftus,* for appellants.

*James Gooding* and *Beckman, Kuvara & Gooding,* for respondent.

DONWORTH, J.—By this action, respondent, Robert D. Bohnsack, sought to recover for damages allegedly sus-

tained by him as the result of the collision between the automobile he was driving and an automobile driven by appellant Ralph E. Kirkham. Appellant Ralph E. Kirkham will be hereafter referred to as if he were the sole appellant. In his complaint, respondent alleged that appellant was negligent in the following particulars:

(a) In failing to yield right-of-way to plaintiffs;

(b) In failing to slow and wait for plaintiffs to pass before turning left in front of plaintiffs' vehicle:

(c) In turning left without regard for oncoming traffic and particularly plaintiffs' vehicle;

(d) In failing to maintain and keep a proper lookout for vehicular traffic lawfully approaching and in failing to keep his vehicle under control and in failing to apply his brakes in a careful and prudent manner in order to avoid the collision.

(e) In failing to observe plaintiffs' approaching vehicle when, by the exercise of due and reasonable care, defendant could have avoided the collision.

Appellant's answer denied negligence as alleged, and in an amended answer affirmatively alleged that respondent was contributorily negligent. The specific allegations in this regard will be discussed later in this opinion.

The case came on for trial in the King County Superior Court sitting with a jury on October 27, 1965.

On October 29, 1965, after all the evidence was presented, respondent moved for a directed verdict, contending that appellant was negligent as a matter of law, and that there was no contributory negligence on the part of respondent which could have been the proximate cause of the accident. The motion was denied, and the case was submitted to the jury on both issues. Later that same day, the jury returned a general verdict for appellant, there being no indication of whether it found no negligence on the part of appellant, or that contributory negligence on the part of respondent barred his recovery notwithstanding the primary negligence of appellant.

Thereafter, on Tuesday, November 2, 1965, respondent moved for judgment n.o.v. or alternatively for a new

trial.[1] The court denied the motion for judgment n.o.v., but granted the motion for a new trial. It is from this action that this appeal is brought.

The trial court, in its order granting a new trial, stated as its reasons therefor that:

There was no contributory negligence on the part of the plaintiff which contributed to or proximately caused the accident in question. *The evidence was overwhelming that the accident occurred on plaintiff's side of the road and was caused by defendant turning left into plaintiff's lane of traffic.* The evidence showed clearly that defendant driver had a clear and unobstructed view, and did not see plaintiff's vehicle. This he stated on direct examination, by deposition and by written interrogatories. Since defendant did not see that which was present to be seen, there can be no claim of deception. If plaintiff erred in any of his driving habits it cannot as a matter of law be the proximate cause or a proximate cause of this accident. See *Ward vs. Zeugner* (1964) 64 Wash. Dec. 2d, page 581, at page 585 [64 Wn.2d 570, 574].

■ We, therefore, approach the issues presented in this case from the standpoint of the well-settled rule that:

[T]he granting or denial of a motion for a new trial is within the sound discretion of the trial court, and that this court will not intervene unless it can be shown that the trial court manifestly abused its discretion. *Coats v. Lee & Estes*, 51 Wn. (2d) 542, 320 P. (2d) 292 (1958); *Skov v. MacKenzie-Richardson*, 48 Wn. (2d) 710, 296 P. (2d) 521 (1956). See, also, *Riley v. Department of Labor & Industries*, 51 Wn. (2d) 438, 319 P. (2d) 549 (1957). Further, a much stronger showing of an abuse of discre-

---

[1]Appellant contends that the motion should not have been considered by the court, since it was not filed within 2 days as required by RCW 4.64.010, pointing out that the provisions thereof have been held to be mandatory. (Citing *Corbaley v. Pierce Cy.*, 192 Wash. 688, 697, 74 P.2d 993 (1937).

However, under RCW 4.32.250, where good cause is shown for the delay, the court is permitted to extend the time within which such motions may be filed. Respondent, in this case, filed an affidavit in support of his motion, indicating that he had been ill and bedridden on the Sunday and Monday following the return of the jury's verdict on Friday afternoon. We hold appellant's contention to be without merit. The court properly considered and denied the motion.

tion will ordinarily be required to set aside an order granting a new trial than one denying a new trial. *Riley v. Department of Labor & Industries, supra; Johnson v. Howard,* 45 Wn. (2d) 433, 275 P. (2d) 736 (1954); *McUne v. Fuqua,* 42 Wn. (2d) 65, 253 P. (2d) 632 (1953). *Nelson v. Martinson,* 52 Wn.2d 684, 686, 328 P.2d 703 (1958).

The facts giving rise to this litigation commenced on the evening of May 6, 1964, when respondent, Bohnsack, stopped at the Eagles Club in Issaquah, where Barney Klander worked as a bartender. The two discussed the possibility of visiting a mutual acquaintance in New Westminster, near Vancouver, B. C., and, after the 2 a.m. closing time on May 7, in the company of one Doris Wright, they began a journey for that purpose. Klander drove and respondent Bohnsack slept until the party arrived at Blaine, Washington, near the Canadian border. Bohnsack drove the rest of the way into Vancouver, where the three had a "full breakfast" at around 7 a.m. They arrived at the home of the acquaintance in New Westminster at about 10 or 10:30 a.m., and stayed for about an hour. During the visit, respondent Bohnsack consumed at least two "drinks." The return trip to Issaquah began at or about noon.

Klander again drove on the return trip while respondent Bohnsack slept in the back seat. At Snohomish, about 15 miles north of the intersection at which this accident occurred, Bohnsack awoke and took the wheel of the car. He drove until the collision with appellant occurred.

The collision occurred at a point where State Highway No. 9, also called the old Woodinville-Snohomish Highway, forms a "T" type intersection with N. E. 195th Street. Highway No. 9, at this point, is a 2-lane asphalt highway divided by a broken white center line. The highway is straight, level, and free of all obstructions for approximately 1,000 feet north of the intersection, and for approximately an equal distance southward.

At the time of the accident, near 6:15 p.m. on May 7, 1964, it was daylight, the skies were partly cloudy, and the highway was dry.

About 1,800 feet north of the intersection, on the west side (respondent's side of the road), is a sign reading "Reduce Speed to 25." About 950 feet north of the intersection and on the west side of the road is a sign reading "Speed Limit 25." About 200 feet from the intersection on the west side is a sign reading "Detour," below which is a diamond-shaped sign with an arrow pointing to the right (*i.e.* in the direction of 195th Street), and below that is a sign reading "10 m.p.h." Then, on the southwest corner of the intersection, on the west side of the road, is a sign reading "Reduce Speed to 50." A short distance south of the intersection, the posted speed limit is 50 miles per hour.

The speed limit for northbound traffic at this point was 60 miles per hour.

Respondent, traveling south, testified that he saw the "Reduce to Speed 25" sign, and did reduce his speed in response thereto. As he proceeded toward the intersection, according to his testimony, he saw appellant's automobile stopped at the intersection with its left-turn indicator flashing, and thereafter did not pay "too much attention" to appellant until he got almost to the intersection. As he neared the intersection and saw the "Reduce Speed to 50" sign, he accelerated, and, at the time of the collision, was traveling at a speed somewhere between 41½ and 60 miles per hour.

Appellant testified that he had stopped, headed northward and on his own side of the road, signaling his intention to make a left turn. He looked, but testified that *at no time before the collision did he see respondent's oncoming automobile.*

According to respondent, appellant commenced his left turn directly in front of him just as respondent entered the intersection. According to appellant, respondent crossed the center line and struck his stationary automobile.

State Trooper Wallace Johnson, who investigaged the accident, stated unequivocally that the impact occurred in the southbound lane (*i.e.* respondent's lane of travel), the automobiles colliding left front to left front. Respondent's

automobile left skid marks (77 feet and 87 feet long on the left and right sides respectively) wholly on his own side of the road. Appellant's automobile was headed in a northwesterly direction (toward 195th Street) when struck. After the collision, respondent's automobile came to rest near the west edge of the roadway, off the pavement, and appellant's automobile was across the center line, headed in a southeasterly direction.

Appellant's own expert witness, Captain Edgar T. Corning of the Seattle Police Department, testified that, in his opinion, the impact was unquestionably on respondent's side of the road.

The sole evidence which is seemingly in opposition to the testimony above described is the testimony of appellant, who, on direct examination, testified as follows:

Q. Is it your statement that that impact took place on your side of the road or on Mr. Bohnsack's side of the road? A. On my side. Q. It took place on your side? A. That is right. Q. Is it your statement Mr. Bohnsack crossed the line and hit your car? A. He'd have to have to hit me. It was a head-on collision. Q. I see. A. If I had been turned, it would have hit on the other side of the car. Q. It is your statement the accident took place in your lane of travel? A. Yes, sir. Q. And that Mr. Bohnsack crossed the center line and hit you? A. Had to.

On cross-examination, appellant testified as follows:

Q. Previously you stated you were sure you were on your own side of the road. Is that correct? A. Yes. Q. There was no part of your vehicle at the time of this impact that was over the center line? A. There was no visible lines there. Q. I am asking you if at the time of the impact to your knowledge if there was any part of the vehicle over the center line on Mr. Bohnsack's side of the road. A. *I don't think so.* Q. Was it your statement he came over the center line and hit you? A. He would have had to. (Italics ours.)

 The physical evidence at the scene supports only one conclusion on this issue, *i.e.* that the impact occurred in respondent's lane of travel.

In *Fannin v. Roe,* 62 Wn.2d 239, 243, 382 P.2d 264 (1963), this court stated the established rule that when:

"[P]hysical facts are uncontroverted and speak with a force that overcomes all testimony to the contrary, reasonable minds must follow the physical facts, and therefore cannot differ." *Mouso v. Bellingham & Northern R. Co.,* 106 Wash. 299, 303, 179 Pac. 848.

See, also, *Archibald v. Gossard,* 65 Wn.2d 486, 397 P.2d 851 (1965).

The statute in effect at the time of the collision,[2] RCW 46.60.160, provided that:

It shall be the duty of any operator of any vehicle upon entering an intersection and having signaled his intention as required by law to turn such vehicle to the left to look out for and give right of way to vehicles approaching in the opposite direction and thereby placed on his right, simultaneously approaching the given point within the intersection, whether such vehicle first enter and reach the intersection or not.

■ Appellant, having crossed in front of respondent's oncoming vehicle, and into respondent's lane of travel, did so in violation of the above-cited statute. Appellant owed respondent the duty to yield the right of way. Having failed to do so, he is guilty of negligence as a matter of law, which negligence was a proximate cause of the collision, and it was error to have submitted the issue of appellant's negligence to the jury. *Watson v. Miller,* 59 Wn.2d 85, 366 P.2d 190 (1961).

We conclude, therefore, that the erroneous submission to the jury of the question of appellant's primary negligence (a ground implicit in the trial court's order granting a new trial) is sufficient to sustain the trial court's action in this regard. The granting of a new trial must be sustained. Appellant was guilty of negligence as a matter of law, and the jury shall be so instructed upon retrial of this case.

■ The remaining question is whether or not the question of respondent's contributory negligence shall be sub-

[2]The applicable statute is now RCW 46.61.185, recodified by Laws of 1965, 1st Ex. Ses., ch. 155, § 29.

mitted to the jury upon retrial. In *Bauman v. Complita,* 66 Wn.2d 496, 497, 403 P.2d 347 (1965), we said that:

> The issue of contributory negligence is generally one for the jury to determine from all the facts and circumstances of the particular case. It is only in rare cases that the court is justified in withdrawing the issue of contributory negligence from the jury. *Baxter v. The Greyhound Corp.,* 65 Wn.2d 421, 426, 397 P.2d 857 (1964); *Becker v. Tacoma Transit Co.,* 50 Wn.2d 688, 695, 314 P.2d 638 (1957); *Hynek v. Seattle,* 7 Wn.2d 386, 398, 111 P.2d 247 (1941); *McQuillan v. Seattle,* 10 Wash. 464, 465, 38 Pac. 1119 (1895).
>
> . . . .
>
> Before the trial court can take the issue of contributory negligence from the jury and hold, as a matter of law, that there was none, the evidence must be such that all reasonable minds would agree that the plaintiff had exercised the care which a reasonably prudent man would have exercised for his own safety under the circumstances. *Hynek v. Seattle, supra; Chadwick v. Ek, supra* [1 Wn.2d 117, 129, 95 P.2d 398 (1939)].

In *Ward v. Zeugner,* 64 Wn.2d 570, 574, 392 P.2d 811 (1964), it was said:

> Even though plaintiff violated the statute and was thereby guilty of negligence per se, such does not bar plaintiff's recovery or warrant submitting such violation to the jury, unless there be substantial evidence, as distinguished from a mere scintilla, that the violation proximately contributed to causing the accident.

With these principles in mind, therefore, we shall examine the allegations of appellant regarding respondent's alleged contributory negligence to determine (1) whether there is evidence upon which reasonable minds could differ on the question of whether respondent exercised reasonable care; and (2) whether there is substantial evidence that such negligence, if it existed or could be found to have existed, proximately contributed to causing the accident.

Appellant first contends that respondent was contributorily negligent in failing to maintain and keep a proper lookout for vehicular traffic and in failing to keep his vehicle under proper control.

■ With regard to a favored driver's obligation to observe an approaching vehicle, this court, in *Underwood v. Tremaine*, 64 Wn.2d 12, 390 P.2d 533 (1964), held that the failure of a driver to adequately observe an approaching vehicle prior to its suddenly crossing the center line of a highway from its own lane of travel into that of the favored driver, does not establish negligence on the part of the favored driver, since, until such time as the approaching vehicle crossed the center line into his lane there was no reason for the defendant to be concerned with its presence on the highway.

This rule is entirely consistent with the general rule that a favored driver is entitled to rely on his right of way until he becomes aware, or in the exercise of reasonable care should have become aware, that the right of way will not be yielded. *Tobias v. Rainwater*, 71 Wn.2d 845, 431 P.2d 156 (1967).

The record in this case is devoid of any evidence that, if respondent had been more attentive to appellant's vehicle, he could have realized that his right of way was being violated in sufficient time to stop. The contention does not, therefore, raise an issue of contributory negligence sufficient to go to the jury.

Appellant next contends that respondent was contributorily negligent in failing to make proper application of his brakes in a careful and prudent manner in order to avoid the collision. We are unable to find any substantial evidence in the record that such is the case. Again, no issue is raised sufficient to justify submission to the jury of the question of respondent's contributory negligence.

Appellant then contends that respondent was contributorily negligent in operating a vehicle upon a public highway while under the influence of intoxicating liquor.

■ There is evidence in the record that respondent had consumed one or more drinks some hours before the accident. Further, the trooper who investigated the accident stated that, shortly after the accident, he could detect the odor of "stale" alcohol on respondent's breath. But the troop-

er's testimony that respondent was mentally alert and not under the influence of alcohol stands undisputed by this record. In *Madill v. Los Angeles Seattle Motor Express,* 64 Wn.2d 548, 392 P.2d 821 (1964), this court held that, where there was a complete absence of any evidence that such driver was under the influence of alcohol, it was error to permit the jury to consider whether the driver was under the influence of, or affected by, intoxicating liquor, even though there was evidence, as here, that she had consumed some alcohol prior to the accident. To the same effect is *White v. Peters,* 52 Wn.2d 824, 329 P.2d 471 (1958), and cases cited therein.

We conclude that there was not sufficient evidence as to respondent's intoxication to warrant the submission of that issue to the jury.

Appellant next contends that respondent was guilty of contributory negligence in operating his automobile on a public highway without benefit of "proper sleep and rest" so as to endanger other users of the highway and, in particular, appellant. Although there is testimony that respondent had had a minimum total of 8 hours of sleep since leaving Issaquah on the previous morning, the record is absolutely devoid of any evidence of a substantial nature that respondent's lack of "proper" sleep in any way contributed to the accident. On the contrary, the investigating state trooper's testimony that respondent appeared to him to be "alert" is uncontroverted. Therefore, again, there is not sufficient evidence concerning this contention to justify the submission of the question of respondent's contributory negligence to the jury.

Appellant further contends that respondent was contributorily negligent in crossing over the center line and colliding with appellant's vehicle which was then stopped preparatory to making a left turn. As stated earlier in this opinion, there is no substantial evidence to support this contention, and the issue of contributory negligence should not be submitted to the jury on this ground.

Appellant then contends that respondent was contributorily negligent in operating a vehicle upon a public highway at an unlawful rate of speed, or in operating his vehicle upon a public highway at a speed in excess of what a reasonably prudent man under all the attendant circumstances would have done.

As stated earlier in this opinion, estimates of the speed at which respondent was traveling varied from the estimate given by appellant's expert witness (a minimum of 41½ miles per hour) to that given by respondent to the investigating state trooper, according to the trooper's testimony (55-60 miles per hour).

In view of the conflict in the numerous posted speed limit signs on the portion of the highway just north of the point of impact, the question presented is one of reasonable speed under all the circumstances, the posted limits being one of the circumstances to be considered.

In appropriate circumstances, this court has recognized that excessive speed on the part of a favored driver, where it exists, may constitute sufficient contributory negligence to bar such favored driver's recovery. See *Stangle v. Smith,* 10 Wn.2d 461, 117 P.2d 207 (1941); *Bennett v. Karnowsky,* 24 Wn.2d 487, 166 P.2d 192 (1946); *Robison v. Simard,* 57 Wn.2d 850, 360 P.2d 153 (1961).

It is clear, however, that, in order for such excessive speed to bar recovery on the part of the favored driver, it must be a proximate cause of the accident.

The standard for that determination was set forth by this court in *White v. Greyhound Corp.,* 46 Wn.2d 260, 264, 280 P.2d 670 (1955), as follows:

> This court, on several occasions, has held that the speed of an automobile, in excess of that permitted by statute or ordinance, was not the proximate cause of a collision when the automobile of the one charged with excessive speed was where it was entitled to be, and the driver would not have had sufficient time to avoid the collision had he been driving at a lawful speed. *Burlie v. Stephens,* 113 Wash. 182, 193 Pac. 684 (1920); *Clark v. King,* 178 Wash. 421, 425, 34 P. (2d) 1105 (1934); *Hutte-*

*ball v. Montgomery,* 187 Wash. 516, 60 P. (2d) 679 (1936).

Attention should also be given to *Bailey v. Carver,* 51 Wn.2d 416, 319 P.2d 821 (1957), wherein we held that it was error to refuse an instruction in substantially the above language.

In making the determination of whether there was sufficient time in which to avoid the collision, it should also be kept in mind that the favored driver is entitled to proceed on the assumption that his right of way will be respected until he has, or is charged with, notice that such is not the case. After he becomes aware of the impending violation of his right of way, he must further be allowed a reasonable reaction time in which, in the exercise of reasonable care, to act. *Tobias v. Rainwater, supra,* and cases cited therein.

The facts in the case at bar present the question: What was a reasonable speed under all the attendant circumstances, whether that speed was exceeded by respondent, and, if so, whether such excessive speed on respondent's part was a proximate cause of the collision. We deem these questions properly for a jury in view of the conflicting evidence.

In summary, the trial court's granting of a new trial is affirmed on the ground that the issue of appellant's primary negligence was erroneously submitted to the jury. Upon retrial, the jury should be instructed that appellant was negligent as a matter of law.

The jury then must consider, under proper instructions, the question of respondent's contributory negligence based on his alleged excessive speed. Should it be determined that he was not exceeding a reasonable speed, or that such excessive speed was not the proximate cause of the collision, then the jury must determine the amount of damages to be recovered.

The order of the trial court granting respondent a new trial is hereby affirmed.

Due to the late filing of his brief, respondent shall not be allowed the cost thereof on this appeal. He shall recover his other taxable costs only.

FINLEY, C. J., HAMILTON and NEILL, JJ., and LANGENBACH, J. Pro Tem., concur.

*Reported in 432 P.2d 293.