31 P.3d 6 (2001)
Lawerence R. HOUGH and Ethel Hough, husband and wife; and Roberta Hough, a single person, Respondent,
v.
Robin S. BALLARD and "Jane Doe" Ballard, husband and wife, and the marital community consisting thereof, Appellant.
No. 25411-5-II.
Court of Appeals of Washington, Division 2.
August 31, 2001.
*8 David Michael Jacobi, Wilson Smith Cochran & Dickerson, Seattle, for Appellants.
Mark W. Conforti, William M. Wood, Meikle & Wood, Tacoma, Raymond W. Schutts, Spokane, for Respondents.
*7 HUNT, A.C.J.
IT IS SO ORDERED.
Robin S. Ballard appeals partial summary judgment in favor of Lawerence R. Hough in a tort action arising from a nighttime collision at an intersection with inoperative traffic lights. The trial court ruled as a matter of law that Ballard was 100 percent liable because Hough was the favored driver. Because there are material issues of fact concerning the cause of the accident and Hough's comparative negligence, we reverse and remand on the issue of liability.

FACTS

I. THE ACCIDENT
It was a stormy, dark night on September 28, 1995, and the power was out. The traffic signals and streetlights were not functioning at the intersection of Canyon Road and 128th Street E. in Pierce County. Recognizing that visibility was poor, Robin Ballard, driving west on 128th Street E., had stopped at the darkened intersection before proceeding carefully across 128th Street going 10 miles per hour. Lawerence Hough's vehicle was nowhere in sight as Ballard entered the five-lane-wide intersection. But as Ballard proceeded across the intersection, reaching the far lane, Hough rammed into the side of Ballard's van. See diagram below, taken from the Traffic Collision Report appended to Respondent's Brief.[1]

Hough had been driving south on Canyon Road, with his headlights on, at between 35 and 40 miles per hour, about 10 miles per hour below the speed limit. Hough's daughter, Roberta Hough, was a passenger in his car. Hough knew that there was a power outage in the area, a mile before the intersection, an area that he had driven before. But as Hough approached the intersection, he was unaware that he was entering it; he neither stopped nor slowed. He did not perceive that the traffic signals were out until he saw Ballard's van in front of his headlights *9 and hit it.[2] "[U]ntil then, [Hough] had no idea where [he] was located." Clerk's Papers at 56-57. See also Traffic Collision Report, supra.

II. PROCEDURAL BACKGROUND
Three years later, Hough sued Ballard for personal injuries arising from the collision. Hough moved for partial summary judgment on liability, supported by a memorandum, an affidavit containing excerpts from Ballard's deposition, and affidavits from Hough and his daughter. Ballard filed an Opposition to Plaintiffs' Motion for Partial Summary Judgment, supported by a declaration with excerpts from Ballard's and Hough's depositions. Hough filed a Reply Memorandum, supported by an affidavit containing further excerpts from his and his daughter's depositions.
The trial court granted Hough's motion for partial summary judgment, ruling that Ballard was "liable for all damages sustained by the Plaintiffs, which were proximately caused by the collision on September 28, 1995." Clerk's Papers at 77. The court also "declared [Hough] to be free of any comparative negligence for purposes of the arbitration award and/or verdict to be rendered in this case." Clerk's Papers at 77.
The case was then set for mandatory arbitration to determine damages. After the arbitration, the trial court entered a Judgment on Arbitration Award in the amount of $18,791 for Hough, and $9,081 for Roberta Hough. Ballard appealed.

ANALYSIS

I. APPEALABILITY
On January 7, 2000, our court Clerk questioned whether the findings below were sufficient for appellate review under RAP 2.2(d) and set the matter on the court's motion docket without oral argument. RAP 6.2(b). Ballard filed a memorandum arguing that the case was "ripe for review and that he [was] entitled to pursue this appeal as a matter of right under RAP 2.2(a)(1)." Hough did not allege that the case was not appealable.
On January 28, 2000, our court commissioner ruled the matter appealable under RAP 2.2(a)(1). Hough did not file a motion to modify; thus, the commissioner's ruling became final in that neither party was entitled to further review as a matter of right.[3]
Hough now argues for the first time that this case is not properly before us, characterizing it as an improper appeal from a mandatory arbitration, citing MAR 6.3. Ballard responds that the case is appealable because: (1) he is not challenging the arbitration damages award; (2) the trial court's partial summary judgment on liability was not itself a final, appealable judgment; and (3) his first chance to appeal summary judgment arose only after the trial court's entry of final judgment under RAP 2.2(a)(1) following the arbitrator's damages award. Reply Brief of Appellant at 3-4.
Hough's appealability challenge is untimely: He failed to contest appealability when that issue was before the court commissioner. He failed to move to modify the commissioner's determination of appealability under RAP 17.7. Moreover, he sought to benefit from the jurisdiction of this Court by filing a motion on the merits under RAP 18.14, in which he asked for dismissal of the appeal or, in the alternative, an order affirming *10 the trial court's entry of judgment.[4] Hough cannot now argue that this court has no jurisdiction when he had ample opportunity previously to argue this claim and failed several times to do so.

II. SUMMARY JUDGMENT

A. STANDARD OF REVIEW
On a motion for summary judgment, the trial court is required to view all evidence, to draw all reasonable inferences in favor of the nonmoving party, and to deny the motion if the evidence and inferences create any question of material fact. DeYoung v. Providence Med. Ctr., 136 Wash.2d 136, 140, 960 P.2d 919 (1998); Scott v. Pacific West Mountain Resort, 119 Wash.2d 484, 487, 834 P.2d 6 (1992). Here, the trial court granted Hough's motion for partial summary judgment on the ground that Ballard was negligent as a matter of law and, therefore, 100 percent liable for Hough's damages.
On appeal from a grant of summary judgment, we engage in the same inquiry as the trial court. Benjamin v. Wash. State Bar Ass'n, 138 Wash.2d 506, 515, 980 P.2d 742 (1999). Summary judgment is appropriate if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Kruse v. Hemp, 121 Wash.2d 715, 722, 853 P.2d 1373 (1993); CR 56(c). Whether there has been negligence or comparative negligence is a jury question, unless the facts are such that all reasonable persons must draw the same conclusion from them, in which event the question is one of law for the courts. Shook v. Bristow, 41 Wash.2d 623, 626, 250 P.2d 946 (1952).

B. PARTIAL SUMMARY JUDGMENT ON LIABILITY
Drawing all inferences in favor of the nonmoving party, Ballard, the primary legal question is whether he produced sufficient evidence concerning questions of material fact to defeat a motion for summary judgment under the standards of DeYoung v. Providence Med. Ctr., 136 Wash.2d at 140, 960 P.2d 919. Contrary to the trial court's order granting summary judgment,[5] Ballard produced ample facts for a jury to conclude that Hough was comparatively negligent in failing to follow the applicable rules of the road. The trial court erred in granting Hough's motion for summary judgment on liability.

1. RULES OF THE ROAD
The facts as alleged could reasonably lead to the conclusion that Ballard followed the applicable rules of the road and that Hough did not, yielding a result short of 100 percent fault and liability on Ballard's part.

a. FAVORED DRIVER
RCW 46.61.180, governing vehicles approaching an intersection, provides:
(1) When two vehicles approach or enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right.
(2) The right of way rule declared in subsection (1) of this section is modified at arterial highways[6] and otherwise as stated in this chapter.
(Emphasis added.) The accident report depicts Ballard's vehicle almost entirely through the intersection by the time Hough entered the intersection and hit the right rear of Ballard's vehicle. See reproduced diagram, supra. Thus, first, there is a question of fact as to whether the two vehicles entered the intersection "at approximately the same time" so as to call into play the favored driver-on-the-right rule for intersections. *11 RCW 46.61.180(1). If they did not, then Hough was not the favored driver under this statute.
As the accident report diagram demonstrates, the timing and location of the collision raise material questions of fact contrary to the trial court's conclusion that Hough was the favored driver simply because he eventually entered the intersection to Ballard's right. Viewing the facts in the light most favorable to the party opposing summary judgment, the facts are susceptible to the conclusion that Ballard entered the intersection well before Hough and that Hough came along somewhat later at a higher rate of speed and entered the intersection without stopping, slowing, or seeing Ballard passing in front of him.
The nature of intersection collisions makes timing an all pervasive element to be evaluated by the jury when the circumstances leave the imposition of fault open to question. The interaction between two vehicles involves location, direction, movement, conditions, obstructions, actions, observations and numerous other influences that may have brought about a crash course rather than safe passage. These matters must be assessed by the jury unless the evidence permits no inference of negligence on the part of one party or on the part of the other. The conduct of the favored or the disfavored driver is subject to jury scrutiny if substantial evidence exists of negligence on the part of either. When approaching an intersection, a favored driver has the right to assume that the disfavored driver will yield the right-of-way to him. Nevertheless, he must exercise ordinary care in his own actions, he may not ignore oncoming traffic and he must keep a lookout for his own safety. If he does not do so, he may be contributorially negligent. Harmon v. Merrick, 62 Wash.2d 171, 381 P.2d 614 (1963); Day v. Frazer, 59 Wash.2d 659, 369 P.2d 859 (1962); Jones v. Widing, 7 Wash.App. 390, 499 P.2d 209 (1972).
Harris v. Burnett, 12 Wash.App. 833, 836, 532 P.2d 1165 (1975).

b. ROAD CONDITIONS AND HAZARDS, INCLUDING INOPERATIVE TRAFFIC SIGNAL
At the time of this auto accident, state law did not specify a particular duty of care required at an intersection where the traffic light is inoperative,[7] other than the general duty to exercise ordinary care or such care as a reasonable person would exercise under the same or similar circumstances.[8] Nor is there Washington case law requiring a specific standard of care for drivers approaching or entering such an intersection. Louisiana courts, however, have imposed a heightened duty of carea duty of "extreme caution"upon a motorist approaching an intersection with non-operative traffic lights. Soprano v. State Farm Mut. Auto. Ins. Co., 246 La. 524, 532-533, 165 So.2d 308 (1964).[9]See also Derrer v. Georgia *12 Elec. Co., 537 So.2d 593 (Fla. 3d DCA 1988) (although not imposing a similar heightened duty of care, the Florida court expressed incredulity that inoperative traffic signals at an intersection could be a proximate cause of an accident if the motorist was exercising ordinary care, rather than driving negligently).[10]
Generally, the duty of motorists entering uncontrolled intersections is governed by La.R.S. 32:121. This statute provides that the driver of a vehicle on the left, shall yield the right of way to the vehicle on the right. Additionally, La.R.S. 32:122 places a high degree of care on left-turning vehicles, and mandates that a left-turning driver yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close as to constitute an immediate hazard.[[11]]
Thompson v. Chevron U.S.A., 653 So.2d 1351, 1353 (La.App. 1 Cir., 1995).
At least one Washington case, however, addresses the standard of care at unsignalled intersections:
When a disfavored driver seeks to recover from a favored driver for damages suffered in an accident at an uncontrolled intersection, the evidence produced at trial will be sufficient to support a finding that the defendant's negligent conduct was a cause in fact ... only if it supports a reasonable inference as to approximately where the favored driver was when, in the exercise of reasonable care, he or she should have realized that the disfavored driver was not going to yield. At an uncontrolled intersection, the driver on the right has the right of way, and the driver on the left must yield. RCW 46.61.180(1). Each must still exercise reasonable care, RCW 5.40.050, Whisler v. Weiss, 26 Wash.2d 446, 459-60, 174 P.2d 766 (1946) (favored driver); White v. Fenner, 16 Wash.2d 226, 235, 133 P.2d 270 (1943) (same); Kilde v. Sorwak, 1 Wash.App. 742, 746, 463 P.2d 265, (disfavored driver), review denied, 77 Wash.2d 963 (1970), but whether each does is measured in light of all the circumstances, including whether a reasonable person in the position of one driver or the other would have expected to have the right of way.
Whitchurch v. McBride, 63 Wash.App. 272, 275-76, 818 P.2d 622 (1991).
Here, Hough was aware of the hazardous conditions: the power outage; the dark, stormy night; low visibility; and inoperative lights and traffic signals at the intersection. Taking into consideration these hazardous conditions, a reasonable fact-finder could conclude that Hough was not exercising reasonable care in approaching the intersection without stopping or slowing.

c. SPEED

1. Too fast for conditions
Whether Hough's excessive speed was a proximate cause of an accident is a question of fact for the jury and is not to be resolved by the trial court as a matter of law. *13 Moyer v. Clark, 75 Wash.2d 800, 454 P.2d 374 (1969). Even a favored driver must slow down when approaching an intersection and must exercise reasonable care under the conditions present. RCW 46.61.400(3), for example, provides in pertinent part:
The driver of every vehicle shall, consistent with the requirements of subsection (1) of this section, drive at an appropriate reduced speed when approaching and crossing an intersection ... and when special hazard exists with respect to pedestrians or other traffic or by reason of weather or highway conditions.

(Emphasis added.) Subsection (1) of RCW 46.61.400 provides:
No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards then existing. In every event speed shall be so controlled as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and the duty of all persons to use due care.

(Emphasis added.)
Thus, RCW 46.61.400 imposes a duty to drive at a prudent speed, not only for known conditions, but also for "potential" hazards. Hough had a duty to maintain a safe speed to avoid a collision in the event that: (1) the power outage rendered the traffic signals inoperative and darkened the intersection; and (2) his speed might be too fast to enable him to see another vehicle in his path in time to avoid a collision.
In Harris, the appellate court held that it would have been error for the trial court to have granted a directed verdict for the plaintiff under facts analogous to those here:
It is for the jury to decide whether the driver of a vehicle was exceeding the speed limit or exceeding a reasonable speed under the circumstances and whether such excessive speed constituted negligence....
When there is conflicting evidence as to the proper speed on an approach to an intersection, it is for the jury to decide (a) what was a reasonable speed under all of the circumstances, (b) was that speed exceeded by the approaching driver, and (c) if so, was the speed a proximate cause of the accident. Bohnsack v. Kirkham, 72 Wash.2d 183, 432 P.2d 554 (1967); Thompson v. Seattle, 42 Wash.2d 53, 253 P.2d 625 (1953). The operator of a motor vehicle is required to drive at a speed that allows him to observe the roadway ahead and be able to take appropriate action in the event that hazards appear in his path. James v. Edwards, 68 Wash.2d 194, 412 P.2d 123 (1966). Whether a person has driven at a reasonable speed under the existing circumstances and conditions is for the jury. Wolff v. Coast Engine Prods., Inc., 72 Wash.2d 226, 432 P.2d 562 (1967); Ashley v. Ensley, 44 Wash.2d 74, 265 P.2d 829 (1954); Pancoast v. McLean, 6 Wash.App. 592, 494 P.2d 1374 (1972). In addition, where two vehicles have simultaneously approached an intersection, the jury has the duty of deciding whether the disfavored driver was deceived by excess speed on the part of the favored driver or the favored driver's operation of his vehicle....[[12]] *14 Harris, 12 Wash.App. at 836-37, 532 P.2d 1165.
Again, looking at the facts in the light most favorable to Ballard, against whom summary judgment was granted, there was substantial evidence to raise questions of material fact as to whether Hough failed to exercise due care in driving at a speed appropriate for the existing and potential conditions and hazards.[13] First, the record suggests that Hough failed to exercise the proper care when entering an intersection as required in RCW 46.61.400(3) in that he did not reduce his speed sufficiently to adjust for the darkness of the intersection where the power outage had rendered the overhead and traffic lights inoperable. Second, the record suggests that he failed to control his speed in light of the hazards and existing conditions and to avoid "colliding with any person, vehicle or other conveyance" in accordance with RCW 46.61.400(1) and RCW 46.61.445. Rather, he continued travelling 35 to 40 miles per hour through the intersection until he collided with Ballard.

2. Speed Under the Limit
Hough argues that because he was driving at a speed less than the posted speed limit, the trial court properly found that he was free from any comparative negligence for the accident. But his argument is contrary to the law.
RCW 46.61.445 provides:

Compliance with speed requirements of this chapter under the circumstances hereinabove set forth shall not relieve the operator of any vehicle from the further exercise of due care and caution as further circumstances shall require.

(Emphasis added.) "The purpose of this statute is to indicate that, under certain conditions, the lawful speed may be less than the posted speed limit." Owens v. Seattle, 49 Wash.2d 187, 299 P.2d 560 (1956), citing to the predecessor statute to RCW 46.61.400. Posted speed limits merely indicate the maximum speed a person may legally drive a vehicle; but these posted speed limits give way "when a special hazard exists that requires lower speed for compliance with subsection (1)." RCW 46.61.400(2). See also RCW 46.61.445; 46.61.400(1).
A party may be liable for negligently contributing to causing a collision if "he was traveling at a rate of speed greater than was reasonable or proper under the conditions existing at the particular point of operation...." Shultes v. Halpin, 33 Wash.2d 294, 306, 205 P.2d 1201 (1949). Where, as here,
there is conflicting evidence as to the proper speed on an approach to an intersection, it is for the jury to decide (a) what was a reasonable speed under all of the circumstances, (b) was that speed exceeded by the approaching driver, and (c) if so, was the speed a proximate cause of the accident. Bohnsack v. Kirkham, 72 Wash.2d 183, 432 P.2d 554 (1967); Thompson v. Seattle, 42 Wash.2d 53, 253 P.2d 625 (1953).
Harris, 12 Wash.App. at 836-37, 532 P.2d 1165 (emphasis added). So too, here, it is for the jury to decide whether Hough's speed before approaching and crossing the intersection was reasonable under the circumstances.

3. COMPARATIVE NEGLIGENCE
Even assuming, without so holding, that Hough was the favored driver, he was not thereby relieved from exercising due care in approaching the intersection.
When approaching an intersection, a favored driver has the right to assume that the disfavored driver will yield the right-of-way to him. Nevertheless, he must exercise ordinary care in his own actions, he may not ignore oncoming traffic and he must keep a lookout for his own safety. If *15 he does not do so, he may be contributorily negligent. Harmon v. Merrick, 62 Wash.2d 171, 381 P.2d 614 (1963); Day v. Frazer, 59 Wash.2d 659, 369 P.2d 859 (1962); Jones v. Widing, 7 Wash.App. 390, 499 P.2d 209 (1972).
Harris, 12 Wash.App. at 836, 532 P.2d 1165. Washington courts have consistently held "that all rights of way are relative and the duty to avoid accidents or collisions at street intersections rests upon both drivers." Bennett v. Karnowsky, 24 Wash.2d 487, 491, 166 P.2d 192 (1946).
Contributory[14] negligence is an issue for the jury to determine from all the facts if substantial evidence has been admitted which would support any interpretation leading to a reasonable conclusion that the plaintiff was negligent. A jury question arises unless the evidence is such that all reasonable minds would agree that the plaintiff had exercised the care a prudent person would have exercised under the circumstances. Shasky v. Burden, 78 Wash.2d 193, 470 P.2d 544 (1970); Poston v. Mathers, 77 Wash.2d 329, 462 P.2d 222 (1969); Bauman v. Complita, 66 Wash.2d 496, 403 P.2d 347 (1965); Stevens v. State, 4 Wash.App. 814, 484 P.2d 467 (1971). The plaintiff's motion ... asserted that the evidence determined the negligence of the defendant as a matter of law. In such a situation, unless the evidence when interpreted most strongly against the plaintiff and most favorably for the defendant establishes negligence on the part of the defendant and an absence of negligence on the part of the plaintiff, the motion must be denied. Moyer v. Clark, 75 Wash.2d 800, 454 P.2d 374 (1969); Pollard v. Wittman, 28 Wash.2d 367, 183 P.2d 175 (1947).
Harris, 12 Wash.App. at 835, 532 P.2d 1165.
It is "bizarre" and beyond the "range of ordinary human experience" for a driver to miss seeing the entire intersection where the inoperable traffic light is located. Derrer v. Georgia Elec. Co., 537 So.2d 593, 594 (Fla. 3§d DCA 1988). Based on the record, it appears that reasonable people will not necessarily "draw the same conclusion from" the record; thus, this case does not meet the standard for allowing a trial court to determine negligence as a matter of law. Shook, 41 Wash.2d at 625, 250 P.2d 946. Here, the question of negligence is one of fact, not a question of law for the trial court.
There has been no appeal from or challenge to the arbitrator's damages award.[15] "When no error is assigned to the amount of damages, we remand for retrial on the issue of liability only." Keller v. City of Spokane, et al., 104 Wash.App. 545, 17 P.3d 661, 668 (2001).
Therefore, we reverse the trial court's grant of partial summary judgment as to liability and remand for findings as to the extent of each party's negligence, with damages apportioned accordingly.
We concur: MORGAN, J., and SEINFELD, J.
NOTES
[1] We have added the initials "B" and "H" for ease of reference in identifying the vehicles of Ballard and Hough, respectively.
[2] See the following excerpt from Hough's deposition:

Q. What was your first indication that there was going to be an accident?
A. [Hough] I had a van appeared right in front of my headlights ... Just saw, like I say, a van that just materialized....
Q. Before the impact, did you hear any horns or squealing of tires or skidding, anything like that?
A. [Hough] No.
Clerk's Papers at 60.
[3] If an aggrieved party fails to seek modification of a commissioner's ruling within the time permitted by RAP 17.7, the ruling becomes a final decision of the court. In re Detention of Broer v. State, 93 Wash.App. 852, 857, 957 P.2d 281 (1998); Kramer v. J.I. Case Mfg. Co., 62 Wash.App. 544, 547, 815 P.2d 798 (1991); Gould v. Mut. Life Ins. Co., 37 Wash.App. 756, 758, 683 P.2d 207 (1984).
[4] The commissioner denied the motion. Hough did not argue in his motion on the merits that the case was not appealable under RAP 2.2.
[5] In granting partial summary judgment, the trial court found "no genuine issue of material fact necessary for resolution at trial with respect to the issue of liability," ordered that Ballard "is liable for all damages sustained by the Plaintiffs, which were proximately caused by the collision on September 28, 1995," and declared that "plaintiff LAWERENCE HOUGH ... is ... free of any comparative negligence for purposes of the arbitration award and/or verdict to be rendered in this case." Clerk's Papers at 77.
[6] Nothing in the record indicates whether one or both roads were arterial highways for purposes of giving rise to a favored driver on that basis.
[7] In 1999, four years after the Hough-Ballard accident, the Washington State Legislature addressed intersections with inoperative traffic lights in Laws of 1999, Chapter 200, § 1 codified as RCW 46.61.183. This statute now requires drivers to "consider the intersection to be an allway stop." RCW 46.61.183. Under RCW 5.40.050, violation of this statute is evidence of breach of a duty to exercise reasonable care. See n. 8, infra.
[8] Mathis v. Ammons, 84 Wash.App. 411, 416, 928 P.2d 431 (1996). See also RCW 5.40.050.
[9] In Soprano, the court held:

Should [a four-sided automatic signal] device become non-operative, as in this case, the duty of an approaching motorist is then to exercise extreme caution at such an intersection and not to proceed therein until he has ascertained that he can negotiate the intersection with safety. This view accords with reasonable standards of conduct under the circumstances.
165 So.2d 308, 311 (La.1964) (emphasis added). The court went on to hold,
Because of his limited vision and the wet streets, and particularly because of the non-operating signal device, he should have reduced his speed much more than he did as he approached the intersection, or, he should have stopped before entering the intersection, in order that he might ascertain whether he could negotiate the intersection with safety.
Soprano, 165 So.2d at 312. See also Thompson v. Chevron U.S.A., 653 So.2d 1351, 1353 (La.App. 1 Cir., 1995):
A non-functioning, four-sided semaphore signal device at an intersection in plain view of an ordinary observant motorist imposes a duty of extreme caution on any motorist approaching or entering that intersection. To enter such an intersection without slowing down or stopping to ascertain whether the crossing can be negotiated in safety is imprudent and constitutes negligence in legal contemplation.
[10] In Derrer v. Georgia Elec. Co., 537 So.2d 593 (Fla. 3d DCA 1988), a Florida appellate court held that a power company's negligence in causing a "traffic control signal to become inoperative was not, as a matter of law, a proximate cause of the ensuing automobile collision in the intersection and the resultant injury to the plaintiffs." The court stated that inoperative traffic lights do not cause drivers to miss seeing the intersection:

We conclude, however, that [plaintiff Derrer's] oblivious behavior in not realizing she was entering an intersection was not a reasonably foreseeable consequence of the defendant's negligence in causing the traffic light to become inoperable. Surely, inoperable intersectional traffic lights do not, in the range of ordinary human experience, cause automobile drivers to miss seeing the entire intersection where the light is located; such a bizarre occurrence is, in our view, beyond the scope of any fair assessment of the danger created by the inoperable traffic light.
Derrer, 537 So.2d at 594 (emphasis added). See also Thompson v. Chevron U.S.A., 653 So.2d 1351, 1353 (La.App. 1 Cir., 1995).
[11] "The driver of a vehicle within an intersection intending to turn to the left shall yield the right of way to all vehicles approaching from the opposite direction which are within the intersection or so close thereto as to constitute an immediate hazard." La.R.S. 32:122.
[12] The court goes on to describe possible findings of fact:

The plaintiff asserts that his speed could not have been a proximate cause of the collision, claiming that he had only a few seconds to react to avoid the left-turning defendant. This assertion fails to acknowledge that the evidence could also be interpreted to support the defendant's position. As noted in Fovargue v. Ramseyer, 73 Wash.2d 574, 439 P.2d 966 (1968), it is error to direct a verdict for an oncoming favored driver because the disfavored driver did not yield if the testimony would support a jury finding that the favored driver was not in sight when the left turn of the disfavored driver was commenced. The speed with which oncoming traffic crosses the crest of the hill has much to do with the time that a disfavored driver has to observe and avoid the oncoming car. Whether this speed of the favored driver was such as to either bring the favored driver so suddenly upon the scene as to surprise the disfavored driver or impair his own ability to avoid the collision is a jury question.... Certainly there was substantial evidence on which the jury could find that the speed of the plaintiff was a proximate cause of the collision. Ward v. Zeugner, 64 Wash.2d 570, 392 P.2d 811 (1964); Kilde v. Sorwak, 1 Wash.App. 742, 463 P.2d 265 (1970).
Harris, 12 Wash.App. at 837-38, 532 P.2d 1165.
[13] Both Hough and his daughter admitted that they were aware of the special hazards along the road: They knew there was a power outage in the area in which Hough was driving; "it was very dark and extremely difficult to see"; and Hough was "unable to detect that he was approaching the intersection of Canyon Road and 128th Street East...." Respondent's Brief at 22. Although he slowed somewhat below the speed limit, he continued to drive 35 to 40 miles per hour. These circumstances give rise to questions of material fact as to whether Hough was exercising reasonable care while approaching and crossing the intersection.
[14] Previously, the plaintiff's contributory negligence was a complete bar to recovery. Franklin v. Engel, 34 Wash. 480, 76 P. 84 (1904). But in 1973, the Legislature adopted comparative negligence in the state of Washington, Laws of 1973, 1st Ex.Sess ch. 138, § 1. Under Washington's comparative negligence law, "A plaintiff's negligence directly reduces plaintiff's recovery by the percentage of negligence involved." ESCA Corp. v. KPMG Peat Marwick, 135 Wash.2d 820, 830, 959 P.2d 651 (1998), citing Young v. Caravan Corp., 99 Wn.2d 655, 661, 663 P.2d 834, 672 P.2d 1267 (1983). The Legislature enacted the current version of comparative negligence in 1981. RCW 4.22.005, Law of 1981, ch. 27, § 8.
[15] Hough, however, argues that if the judgment on liability were other than 100% on Ballard, he might have chosen to seek a trial de novo on damages. But he has not argued how the damages might differ if liability were apportioned on remand.