FILED
2/16/2021
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| RICHARD FORTMAN, | ) | No. 79864-2-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| PROLIANCE SURGEONS, INC., P.S. | ) | |
| d/b/a PROLIANCE ORTHOPEDIC | ) | |
| ASSOCIATES, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

HAZELRIGG, J. — Richard Fortman brought a medical negligence claim against Proliance Surgeons, Inc. after developing a chronic infection in his ankle when recovering from surgery. Proliance seeks reversal of an order granting partial summary judgment on its affirmative defense of contributory negligence and vacation of the jury's verdict finding that Proliance's negligence led to Fortman's injury. Because Proliance did not present evidence that Fortman's actions between the date of surgery and the date of Proliance's negligent act contributed to the development of a chronic infection, we affirm the grant of partial summary judgment. We also affirm the court's denial of a motion for a new trial because there was evidence to support the jury's finding that Fortman was not negligent and the trial court was in the best position to assess any prejudicial impact of counsel's conduct.

Citations and pinpoint citations are based on the Westlaw online version of the cited material.

FACTS

On June 24, 2015, Richard Fortman fell and fractured his ankle. When he tried to stand, the bone broke through the skin. Fortman was taken by ambulance to Valley Medical Center. Dr. Niket Shrivastava, a board-certified orthopedic surgeon and employee of Proliance Orthopedic Associates (Proliance), was on call for orthopedic trauma in the emergency department. Shrivastava diagnosed a grade three open fracture of the left fibula, involving a fractured bone and laceration of the skin greater than 10 centimeters in length with visible contamination from the environment. He performed surgery that day to realign the bone, secure the bones with screws, repair a torn ligament, and irrigate and debride the wound to clean out dirt and other contaminants.

On July 1, 2015, Fortman was discharged from the hospital to Hallmark Manor, a skilled nursing and rehabilitation facility. He was scheduled to begin physical therapy and instructed to bear no weight on his left ankle. Chad Moloney, a physician assistant and employee of Proliance, examined Fortman five days later and found no signs of infection. Fortman saw Shrivastava on July 17, 2015 and reported that he had accidentally fallen and "landed with some force on his left foot" three days before. Shrivastava noted mild redness around the wound but did not observe drainage. He prescribed a two-week course of an antibiotic, Bactrim, because he was concerned that the wound was showing early signs of infection and wanted to prevent the infection from progressing deeper into the bone.

On July 20, 2015, Fortman had another follow up appointment with Moloney. Fortman reported drainage from the wound and fevers, chills, and flulike

symptoms, indicating a worsening infection. He was admitted to the hospital and given intravenous (IV) antibiotics with a plan to perform another irrigation and debridement procedure the next day in an effort to control the bacterial load. Shrivastava performed the procedure to clean out the wound and collected samples for analysis. The cultured samples showed a large amount of MSSA.[1] Fortman was to remain on the IV antibiotics until he was discharged and then resume Bactrim for one month in an effort to suppress the infection. He was discharged to Hallmark Manor on July 27, 2015.

Fortman returned for a follow up appointment with Shrivastava on August 5, 2015. He reported that he had been putting some weight on his ankle during physical therapy activities despite being instructed to be non-weight bearing on his left ankle. On August 20, 2015, he again saw Shrivastava for a follow up, at which point Shrivastava discovered that Fortman had not been receiving Bactrim for the previous 20 days. The Bactrim was immediately restarted. One week later, Fortman saw Dr. Michael Hori, an infectious disease specialist, who noted that the infection was "clearly worse than it was in the hospital, with increased drain[age] and swelling." Fortman's condition fluctuated over the next several months, during which he underwent removal of the hardware in his ankle, additional irrigation and debridement procedures, and several courses of antibiotics. He was ultimately diagnosed with a chronic bone-deep infection that would require lifetime suppressive antibiotics.

---

[1] Methicillin-sensitive Staphylococcus Aureus.

Fortman brought suit against Proliance, Moloney, and Shrivastava, alleging that the defendants' negligence resulted in his development of chronic osteomyelitis and permanent disability. The parties stipulated to the dismissal of Moloney and Shrivastava. In its answer, Proliance admitted that the lapse in the Bactrim prescription in August 2015 was due to Moloney's negligence and that Proliance was vicariously liable for Moloney's actions. However, Proliance denied that any negligence was a proximate cause of Fortman's injuries and asserted the affirmative defenses of contributory negligence/comparative fault and failure to mitigate damages. Fortman moved for partial summary judgment against Proliance regarding its affirmative defenses. The court granted the motion in part "as to the affirmative defense of contributory negligence/comparative fault as to conduct preceding 7/27/15. Plaintiff's motion is denied as to conduct in failure to mitigate after 7/27/15."

After trial, the jury found that Proliance was negligent and that its negligence was a proximate cause of Fortman's injury. The jury also found that Fortman was not negligent after July 27, 2015. The court entered a judgment against Proliance for $1,500,000. Proliance moved for a new trial, arguing that the verdict was not supported by substantial evidence and that Fortman's counsel committed deliberate and repeated misconduct. The court denied the motion. Proliance appealed from the judgment and the order denying a new trial.

ANALYSIS

I.    Summary Judgment

Proliance first argues that the trial court erred in granting partial summary judgment to Fortman on Proliance's affirmative defense of contributory negligence. Specifically, Proliance argues that it should have been permitted to assert a contributory negligence defense based on Fortman's negligent conduct between June 24, 2015 and July 27, 2015.

A.  Waiver

Fortman contends that Proliance has waived this issue by proposing a jury instruction stating that the jury could not attribute contributory negligence to Fortman's conduct preceding Proliance's admitted negligence, by failing to raise the issue in its motion for a new trial, and by failing to appeal from the summary judgment order. An appellate court may refuse to review a claim of error that was not raised in the trial court. RAP 2.5(a). We will review a trial court order or ruling not designated in the notice of appeal, including an appealable order, if the order prejudicially affects the decision designated in the notice. RAP 2.4(b).

First, as Proliance points out, Fortman proposed the jury instruction stating that the court had already concluded that there was no contributory negligence on Fortman's part before July 27, 2015. Both parties and the court suggested modifications to the language of the instruction. As Proliance also points out, Fortman cites no authority that a party waives any objection to a partial summary judgment order by failing to object to an instruction given in accordance with that order.

Proliance is also correct that the cases cited by Fortman in support of his argument that this issue was waived when not raised in the motion for new trial concern issues never raised before the trial court. See Koboski v. Cobb, 161 Wash. 574, 577, 297 P. 771 (1931) (claim that trial judge erred in visiting the scene of the accident waived when raised for the first time on appeal); Olson v. City of Seattle, 54 Wn.2d 387, 387–88, 341 P.2d 153 (1959) (claim that court commented on the evidence waived when never brought to the attention of the trial court); Wilson v. Overlake Hosp. Med. Ctr., Inc., 77 Wn. App. 909, 914, 895 P.2d 16 (1995) (claim that court erred in permitting evidence waived when appellant did not object to evidence at trial and "made only vague and conclusory objections" in motion for new trial). Unlike these cases, the trial court considered and decided the issue of the scope of Proliance's affirmative defenses. Fortman cites no authority for the proposition that a party must challenge a court's partial summary judgment ruling in a motion for new trial to preserve the issue for appeal.

Finally, Proliance designated the judgment for the plaintiff and the order denying the motion for a new trial in its notice of appeal. Although Fortman argues that the order could not have prejudicially affected the judgment because the court did not entirely dismiss the contributory negligence defense, the court did not allow Proliance to assert that Fortman was contributorily negligent between June 24, 2015 and July 27, 2015. Because the partial summary judgment order restricted the scope of Proliance's affirmative defenses, it could have prejudicially affected the final judgment. Appeal from the final judgment is sufficient to bring the partial

summary judgment order up for review. Proliance has not waived review of the partial summary judgment order.

B. Partial Summary Judgment

This court reviews a trial court's grant of partial summary judgment de novo. Dunnington v. Virginia Mason Med. Ctr., 187 Wn.2d 629, 637, 389 P.3d 498 (2017). We view all facts and reasonable inferences in the light most favorable to the nonmoving party. Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). When reviewing a summary judgment order, we consider only the evidence and issues called to the attention of the trial court. RAP 9.12.

To prevail on his medical negligence claim, Fortman had the burden to prove that Proliance failed to follow the accepted standard of care and that this failure was "a proximate cause of the injury complained of." RCW 7.70.040. "In an action based on fault seeking to recover damages for injury or death to person or harm to property, any contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for an injury attributable to the claimant's contributory fault, but does not bar recovery." RCW 4.22.005. To determine a plaintiff's contributory negligence, "'the inquiry is whether or not he exercised that reasonable care for his own safety which a reasonable man would have used under the existing facts and circumstances, and, if not, was his conduct a legally contributing cause of his injury.'" Dunnington, 187 Wn.2d at 637–38 (quoting Rosendahl v. Lesourd Methodist Church, 68 Wn.2d 180,

182, 412 P.2d 109 (1966)). The question of negligence or comparative negligence is generally one for the jury "'unless the facts are such that all reasonable persons must draw the same conclusion from them, in which event the question is one of law for the courts.'" Id. at 638 (quoting Hough v. Ballard, 108 Wn. App. 272, 279, 31 P.3d 6 (2001)).

In Dunnington v. Virginia Mason Medical Center, the plaintiff alleged that his treating physician was negligent in his diagnosis, which deprived him of a 40 percent chance that his cancer would not recur had proper diagnosis and treatment occurred. Id. at 632–33. The defendant asserted an affirmative defense of contributory negligence based on the plaintiff's delay in returning for follow up care and his decision to pursue conservative treatment options and seek a second opinion rather than undergo the recommended excision and biopsy. Id. The trial court granted the plaintiff's motion to bar the affirmative defense. Id. at 633. The Washington Supreme Court found that the contributory negligence defense was not barred as a matter of law because, looking at the facts in the light most favorable to the defendant, there was an issue of fact as to whether the treating physician would have again recommended an excision if the plaintiff had returned promptly for follow up care. Id. at 639.

Proliance analogizes this case to Dunnington, arguing that it produced evidence that Fortman's negligent failure to follow medical advice between June 24, 2015 and July 27, 2015 contributed to his ultimate injury of chronic osteomyelitis. Fortman contends that "the trial court ruled only that the defendant takes his plaintiff as he finds him," referring to the principle commonly referred to

as the "eggshell plaintiff" doctrine. See Reeder v. Sears, Roebuck & Co., 41 Wn.2d 550, 556, 250 P.2d 518 (1952) ("[I]f by reason of delicate condition of health the consequences of a negligent injury are more serious still, for those consequences the defendant is liable, although they are aggravated by imperfect bodily conditions.") (quoting Jordan v. City of Seattle, 30 Wash. 298, 302, 70 P. 743 (1902)). Proliance does not dispute this principle, but rather, argues that Fortman's acts against medical advice between the date he began treatment and the date of the negligent prescription aggravated his osteomyelitis.

This issue appears to turn on the nature of the "injury complained of" by Fortman. See RCW 7.70.040. Proliance produced evidence that, during the relevant period, Fortman continued to use nicotine, failed to keep his blood sugar within healthy range, and bore weight on his injured ankle contrary to medical advice, all of which increased his risk of infection. If Fortman had alleged that his injury was the development of any infection, this evidence would likely have been sufficient to sustain an affirmative defense of contributory negligence for his acts during treatment. However, Fortman's complaint shows that the injury he complains of is not the initial infection but the development of chronic osteomyelitis in his left ankle and resulting permanent disability. Proliance does not point to evidence showing that Fortman's acts in the period between June 24, 2015 and July 27, 2015 contributed to the escalation of the initial infection to a chronic condition. We affirm the order granting partial summary judgment.

II.      Motion for New Trial

Proliance also argues that the trial court erred in denying its motion for a new trial. We review a trial court's decision on a motion for a new trial for an abuse of discretion unless the decision is based on an error of law. Teter v. Deck, 174 Wn.2d 207, 215, 274 P.3d 336 (2012). A much stronger showing of abuse of discretion is required to set aside an order granting a new trial than one denying a new trial. Id. A court abuses its discretion when its decision is based on untenable reasons or untenable grounds. Hollins v. Zbaraschuk, 200 Wn. App. 578, 582–83, 402 P.3d 907 (2017).

Proliance first argues that the jury's verdict finding that Fortman was not negligent was not justified by any evidence or reasonable inference from the evidence. A trial court may vacate the jury's verdict and grant a new trial if "there is no evidence or reasonable inference from the evidence to justify the verdict." CR 59(a)(7). A court abuses its discretion if it denies a motion for a new trial when the verdict is contrary to the evidence viewed in the light most favorable to the nonmoving party. Meinhart v. Anaya, 1 Wn. App. 2d 59, 66, 403 P.3d (2017).

Viewing the evidence in the light most favorable to Fortman, there was evidence that Fortman acted with reasonable care after July 27, 2015 and did not contribute to the development of the initial infection into chronic osteomyelitis. Fortman testified that his doctors had not directed him to stop using nicotine, that any weight-bearing on his left ankle was accidental, and that his diabetes was under control. We affirm the court's denial of a new trial on this ground.

Proliance also argues that the flagrant misconduct of Fortman's counsel throughout the trial deprived Proliance of a fair trial. A trial court may grant a new trial when misconduct of the prevailing party materially affects the substantial rights of the losing party. CR 59(a)(2); Teter, 174 Wn.2d at 220–21. "The trial court is 'in the best position' to gauge the prejudicial impact of counsels' conduct on the jury," and the appellate court should not substitute its own judgment in evaluating the scope and effect of that misconduct. Clark v. Teng, 195 Wn. App. 482, 492, 380 P.3d 73 (2016) (quoting Taylor v. Cessna Aircraft Co., 39 Wn. App. 828, 832, 696 P.2d 28 (1985)).

Here, Proliance alleges that repeated violations of the rules of evidence and the court's rulings on the motions in limine. The trial court sustained many of Proliance's objections and gave curative instructions to the jury. The trial court was in the best position to assess any prejudicial effect of these actions and objections on the jury. We affirm the court's denial of a new trial on this ground.

Affirmed.

WE CONCUR:

- 11 -